IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXCELSIOR INSURANCE COMPANY | : | |
| and PEERLESS INSURANCE COMPANY | : | Case No.: |
| Plaintiffs, | : | |
| V. | : | |
| MICHAEL KORS, LLC, | : | |
| C.G.C. ENTERPRISES, INC., | : | |
| CHARLES CHESLOCK, | : | |
| DIGSBY, TAYLOR & HOBBES, LLC, and | : | |
| RICHARD LEBOV; | : | MAY 15, 2020 |
| Defendants. | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs Peerless Insurance Company ("Peerless") and Excelsior Insurance Company ("Excelsior") (collectively, "Plaintiffs") by way of this Complaint for Declaratory Judgment against the Defendants Michael Kors, LLC, C.G.C. Enterprises, Inc., Charles Cheslock, Digsby, Taylor & Hobbes, LLC, and Richard Lebov state and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this action seeking a declaration that they have no duty to defend Digsby, Taylor & Hobbes, LLC and Richard Lebov and have no duty to indemnify Digsby, Taylor & Hobbes, LLC, Richard Lebov or anyone else, including anyone who may gain a judgment against them for any injuries or damages claimed in the matter *Michael Kors, LLC v.* C.G.C. *Enterprises, Inc., Charles Cheslock, Digsby, Taylor & Hobbes, LLC, Richard Lebov and JOHN DOES 1-100*, filed in the United States District Court for the District of Connecticut and bearing Docket No. 3:19-cv-01364-VLB (hereinafter "Michael Kors Lawsuit"), per the terms of the policies issued by Plaintiffs.

2.     There is an actual bona fide and substantial dispute concerning Plaintiffs' obligations.

## THE PARTIES

3.     Plaintiff Peerless is a corporation incorporated under the laws of the State of New Hampshire with its principal place of business in Massachusetts.

4.     Plaintiff Excelsior is a corporation incorporated under the laws of the State of New Hampshire with its principal place of business in Massachusetts.

5.     Upon information and belief, Defendant Michael Kors, LLC is a Delaware limited liability company with a principal place of business in New York, New, York and a wholly owned subsidiary of Capri Holdings Limited, which is incorporated in the British Virgin Islands and has a principal place of business in London, England.

6.     Defendant C.G.C. Enterprises, Inc. is a Connecticut stock corporation with a principal place of business in New Haven, CT.

7.     Defendant Charles Cheslock is an individual and resident of Connecticut.

8.     Upon information and belief, Defendant Digsby, Taylor & Hobbes, LLC is a Connecticut limited liability company with a principal place of business at 410 Ella Grasso Blvd., New Haven, CT 06519 and all members are residents of Connecticut.

9.     Defendant Richard Lebov is an individual and resident of Connecticut.

## Jurisdiction

10.     Plaintiffs bring this declaratory judgment action pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 2201 and 28 U.S.C. § 2202 because (1) there is an actual controversy between the parties, (2) the amount in controversy exceeds $75,000, exclusive of interests and costs, and (3) the matter is between citizens of different States.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in the District of Connecticut.

## FACTS

### Commercial General Liability Part

13.     Peerless Insurance Company issued to Supreme Corporation, as the first named insured, a commercial package policy, number CBP 8240168, including a commercial general liability ("CGL") coverage part, for the policy period of February 21, 2016 to February 21, 2017. Excelsior Insurance Company issued to Supreme Corporation, as the first named insured, a commercial package policy, number CBP 8240168, including a CGL coverage part, for three consecutive one-year policy periods: February 21, 2017 to February 21, 2018; February 21, 2018 to February 21, 2019; and February 21, 2019 to February 21, 2020. The four Peerless and Excelsior commercial package policies identified above collectively will be referred to as the "CP Policies."

14.     Digsby, Taylor & Hobbes was added as a named insured on each of these four commercial general liability policies.

15.     All four policies contain Form CG 00 01 10 01.

16.     Form CG 00 01 10 01 provides in the insuring agreement for Coverage A:

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" or "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period….

17.     Form CG 00 01 10 01 provides in the insuring agreement for Coverage B:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**a.  Insuring Agreement**

i.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

1.  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

2.  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or

services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

    ii.   This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

18.    Form CG 00 01 10 01 provides the following exclusions for Coverage B:

**2.  Exclusions**

This insurance does not apply to:

**a.  Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b.  Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c.  Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d.  Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

…

**i. Infringement Of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

…

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

…

19.    Form CG 00 01 10 01 provides the following:

## SECTION II - WHO IS AN INSURED

**1.**    If you are designated in the Declarations as:

…

    **c.**    A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

…

    **d.**    An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

…

**2.**    Each of the following is also an insured:

    **a.**    Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, one of these "employees" or "volunteer workers" are insureds for:

…

20.    Form CG 00 01 10 01 provides the following:

## SECTION V – DEFINITIONS

**1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a**. Notices that are published include material placed on the Internet or on

6

similar electronic means of communication; and

    **b**. Regarding web-sites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

…

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

…

**13.** "Occurrence" means accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

…

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use

of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property.

**h.** As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

21.   Form 22-45 provides the following:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**COMMERCIAL GENERAL LIABILITY EXTENSION ENDORSEMENT**

This endorsement modifies insurance under the

COMMERCIAL GENERAL LIABILITY COVERAGE PART

…

**O. BODILY INJURY REDEFINED**

Under **SECTION V – DEFINITIONS**, definitions **3.** is replaced by the following:

**3.**   "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

**Commercial Umbrella Policies**

22.   Peerless Insurance Company issued to Supreme Corporation, as the first named insured, a commercial umbrella policy, number CU 8245970, over four consecutive one-year policy periods: February 21, 2016 to February 21, 2017; February 21, 2017 to February 21, 2018; February 21, 2018 to February 21, 2019; and February 21, 2019 to February 21, 2020. The four

Peerless Insurance Company commercial umbrella policies identified above collectively will be referred to as the "Umbrella Policies."

23.     Digsby, Taylor & Hobbes was added as a named insured on each of these four commercial umbrella policies.

24.     The Schedule of Underlying Insurance for each of the four respective umbrella policies refers to the commercial general liability insurance bearing the corresponding policy period.

25.     All four policies contain Form 14-210 (02/04).

26.     Form 14-210 (02/04) provides in the insuring agreement

**SECTION I – COVERAGE**

**1.  Insuring Agreement**

    **a.**  We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in **SECTION III – LIMITS OF INSURANCE**. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph **2. Defense And Expense Of Claims And Suits** under **SECTION I - COVERAGE**.

    **b.**  This insurance applies to:

        **(1)**  "Bodily injury" or "property damage" only if:

            **(a)** The "bodily injury" or "property damage" occurs during the Policy Period; and

            **(b)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      ...

        **(2)**  "Personal and advertising injury" caused by an "offense" arising out of your business but only if the "offense" was committed in the "coverage territory" during the Policy Period.

…

**2. Defense And Expense Of Claims And Suits**

    **a. Defense, Investigation And Settlement**

        **(1)** We shall have the right and duty to defend the insured against any claim or "suit" seeking damages to which this insurance applies when:

            **(a)** Such damages are not covered by "scheduled underlying insurance" or "other underlying insurance"; or

            **(b)** The applicable limits of liability of the "scheduled underlying insurance" or "other underlying insurance" have been exhausted by payment of judgments or settlements.

            However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

…

27.     Form 14-210 (02/04) provides the following exclusions:

**3. Exclusions**

This insurance does not apply to:

…

    **s. Personal And Advertising Injury**

"Personal and advertising injury":

    **(1)**     Caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

    **(2)**     Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    **(3)**     Arising out of oral or written publication of material whose first publication took place before the beginning of the Policy Period;

    **(4)**     Arising out of a criminal act committed by or at the direction of any insured;

…

    **(9)**     Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

…

**(12)**     Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

Exceptions:

…

Provision **(9)** of this exclusion **3.s.** does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan…

…

28.     Form 14-210 (02/04) provides the following:

## SECTION II – WHO IS AN INSURED

**1.**  Except for liability arising out of the "auto hazard":

**a.** If you are designated in the Declarations as:

…

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

…

**b.** Each of the following is also an insured:

…

**(5)** Your "volunteer workers" are only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, one of these "employees" or "volunteer workers" are insureds for:

…

29.     Form 14-210 (02/04) provides the following:

## SECTION V – DEFINITIONS

**1.**     "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the

purposes of this definition:

    a. Notices that are published include material placed on the Internet or similar electronic means of communication; and

    b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

…

**4.** "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease. This does not include "consequential bodily injury."

**5.** "Consequential bodily injury" means "bodily injury" arising out of "personal and advertising injury".

…

**7.** "Employee" includes a "leased workers". "Employee" does not include a "temporary worker".

…

**8.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

…

**14.** "Occurrence" means:

    **a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

    **b.** With respect to "employees" of the Named Insured, an accident or disease that results in "bodily injury".

**15.** "Offense" means an offense included in the definition of "personal and advertising injury". All damages that arise from exposure to the same act, publication or infringement are considered one "offense".

**16.** "Other underlying insurance" means insurance that providers coverage for damages covered by this insurance, including any self-insurance or other funding mechanism intended to pay damages covered by this insurance. "Other underlying insurance" does not include "scheduled underlying insurance" or insurance purchased specifically to be excess of this Coverage Part.

…

**17.** "Personal and advertising injury" means injury, other than "bodily injury", arising out of one or more of the following "offenses":

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

"Personal and advertising injury" includes "consequential bodily injury".

…

**21.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing or any other media which are used with electronically controlled equipment.

**22.** "Retained limit" means either:

**a.** The total amount of "scheduled underlying insurance" or "other underlying insurance" applicable to the injury or damage whether such insurance is collectible or not; or

**b.** The Self Insured Retention. This means the amount you will pay as shown in the Declarations for injury or damage covered by this Coverage Part and not covered by ay "scheduled underlying insurance" or "other underlying insurance." The Self Insured Retention will apply separately to each "occurrence" or "offense" to which this insurance applies. The Self Insured Retention does not apply to injury or damage which would have been covered by "scheduled underlying insurance" or "other underlying insurance" but for the exhaustion of applicable limits.

The insured will reimburse us promptly for any amount of judgments and settlements we pay on behalf of the insured that is within the Self Insured Retention.

**23.**   "Scheduled underlying insurance" means the policies of insurance designated in the Schedule of Underlying Insurance show in the Declarations of this Coverage Part, including any renewals or replacements of such policies, which provide the underlying coverages stated in the Schedule of Underlying Insurance.

## Michael Kors Lawsuit

30.   Michael Kors brought suit against C.G.C. Enterprises, Inc.; Charles Cheslock; DTH; Lebov; and "John Does" 1-100 by way of complaint filed September 3, 2019 in the United States District Court for the District of Connecticut, docket no. 3:19-cv-01364-VLB. A copy of the complaint is attached as Exhibit A.

31.   The Complaint alleged that the Michael Kors Lawsuit concerns the offer for sale, sale and other distribution of merchandise bearing counterfeits and infringement of the Michael Kors' trademarks at the flea market at 500 Ella T. Grasso Blvd. in New Haven, CT (the "Flea Market").

32.   It alleged that since at least 1992, C.G.C. Enterprises, Inc. ("CGC") has owned and operated the Flea Market and Charles Cheslock is the president and owner of CGC. DTH owns the property where the Flea Market is located. Lebov is the Vice President of DTH and he has the

right and ability to control the actions of DTH. It alleged that as part of this ownership, DTH entered into a lease with CGC and Charles Cheslock, and that it oversees the operation and conduct of CGC and Charles Cheslock and their tenants, the unnamed John Does.

33.     It alleged that CGC, Charles Cheslock, DTH and Richard Lebov are providing a safe haven for the John Doe Defendants to conduct their illegal conduct despite being put on notice of the illegal conduct.

34.     It alleged that the defendants, generally, have willfully infringed upon Michael Kors' valuable trademarks, creating a strong likelihood of confusion among consumers who expect that merchandise bearing Michael Kors' trademarks will be genuine Michael Kors' products.

35.     It alleged that since at least 2013, CGC, Charles Cheslock, DTH and Richard Lebov have turned a blind eye to the ongoing sale of counterfeit goods at its location, especially the sale of goods bearing counterfeits and infringements of Michael Kors' trademarks as the illegal transactions occurred in the open with no consequences and the Flea Market was a well-known black market for illegal products.

36.     It alleged that since at least 2013, the John Doe defendants have infringed and continue to infringe the Michael Kors' trademarks. It alleged an individual was arrested in 1996 in connection with the offer and sale of counterfeit merchandise at the Flea Market. It alleged that in November 2013, the New Haven Police Department conducted a raid at the Flea Market concerning the sale of counterfeit merchandise at the Flea Market and made multiple arrests specifically in connection with the sale of counterfeit Michael Kors' merchandise. It alleged that inspections of the Flea Market were conducted on June 6, 2018, December 9, 2018 and August 3, 2019 and an investigator working on behalf of Michael Kors observed counterfeit merchandise for sale and was able to purchase counterfeit Michael Kors' merchandise.

37.     It alleged that Michael Kors issued a cease and desist letter on June 7, 2019 to DTH, Lebov, CGC, and Charles Cheslock and had multiple subsequent communications about the sale of counterfeit Michael Kors' merchandise at the Flea Market.

38.     It alleged that DTH and Lebov have ignored the June 7, 2019 cease and desist letter and their counsel responded on June 20, 2019 simply stating the company has nothing to do with the operation of the Flea Market.

39.     It alleged that DTH and Lebov are willfully turning a blind eye to the illegal activity occurring on its property.

40.     It alleged that DTH and Lebov are willfully and consciously avoiding taking any action to stop the illegal activity concerning the Michael Kors' trademarks. It alleged that DTH, Lebov, CGC, and Charles Cheslock are equally liable for the counterfeiting and infringement of the Michael Kors' trademarks as they failed to take proper action to prevent the illegal acts of their tenants. Defendants' conduct is intentionally fraudulent, malicious, willful and wanton.

41.     The First Count of the complaint asserted a claim for trademark counterfeiting against the John Doe Defendants. It alleged that the John Doe Defendants' acts constitute willful trademark counterfeiting in violation of the Lanham Act.

42.     The Second Count in the complaint asserted a claim for trademark against the John Doe Defendants. It alleged that the John Doe Defendants' acts constitute willful trademark infringement in violation of the Lanham Act.

43.     The Third Count in the complaint asserted a claim for federal trademark dilution against the John Doe Defendants. It alleged that the John Doe Defendants' acts dilute the distinctive quality of the Michael Kors' trademarks in violation of the Lanham Act.

44.     The Fourth Count of the complaint asserted a claim for unfair competition, false designation of origin and false description against the John Doe Defendants.

45.     The Fifth Count in the complaint asserted a claim for contributory trademark counterfeiting, trademark infringement, trademark dilution and false designation of origin against DTH, Lebov, CGC, and Charles Cheslock.

46.     The Fifth Count alleged that DTH, Lebov, CGC, and Charles Cheslock with actual and specific knowledge of the unauthorized activities of John Doe Defendants, or with a reason to know of those activities, have materially contributed to the infringing conduct of the John Doe Defendants. It alleged that they have provided the John Doe Defendants with a safe haven and marketplace in which counterfeit Michael Kors' merchandise could be sold openly with impunity. It alleged that they knew the John Doe Defendants have been selling counterfeit Michael Kors' merchandise and have been willfully blind and consciously avoiding taking sufficient action to prevent the illegal conduct from taking place. It alleged that DTH, Lebov, CGC, and Charles Cheslock have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks and that such conduct renders DTH, Lebov, CGC, and Charles Cheslock contributorily liable under the Lanham Act.

47.     The Sixth Count of the complaint, mislabeled as the Fifth Count, asserted a claim for a violation of the Connecticut Unfair Trade Practices Act against all defendants. It alleged that the wrongful conduct of defendants constitutes materially unfair or deceptive trade practices under Connecticut's consumer protection statute and the conduct violates or offends public policy, is immortal, unethical or unscrupulous, or is substantially injurious to consumers, competitors or other businesspersons.

48.    Plaintiffs have been providing a defense pursuant to a reservation of rights to DTH and Lebov in the Michael Kors Lawsuit.

**First Cause of Action - Declaratory Judgment – CP Policies**

49.    Plaintiffs have no obligation to defend Defendants DTH and Lebov against any and all claims alleged in the Michael Kors Lawsuit pursuant to the terms of the four consecutive CP Policies and have no duty to indemnify Defendants DTH and Lebov or anyone else, including anyone who may gain a judgment against them for any injuries or damages claimed in the Michael Kors Lawsuit per the terms of the CP Policies, because:

a.    The CP Policies provide in CGL Coverage A coverage for "bodily injury" or "property damage that "is caused by an 'occurrence' that takes place in the 'coverage territory'…" and the Michael Kors Lawsuit alleged solely economic losses due to intentional conduct, which does not qualify as "bodily injury", "property damage" caused by an "occurrence" as defined by the CP Policies;

b.    The CP Policies provide in the CGL coverage part that DTH's managers, members, and/or employees can qualify as insureds but only to a limited extent as provided in the CP Policies and Lebov's conduct as alleged in the Michael Kors Lawsuit was outside of this capacity;

c.    The CP Policies provide in CGL Coverage B coverage for "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period" and the Michael Kors Lawsuit alleged conduct that preexisted the policy periods of the CP Policies issued by the Plaintiffs;

d.    The CP Policies provide in CGL Coverage B coverage for "'personal and advertising injury' caused by an offense arising out of your business but only if the

offense was committed in the 'coverage territory' during the policy period" and none of the allegations set forth in the Michael Kors Lawsuit qualify as one of the enumerated "personal and advertising injury" offenses;

e.  The exclusion in CGL Coverage B for "personal and advertising injury" that was "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors' goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

f.  The exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

g.  The exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of oral or written publication of material whose first publication took place

before the beginning of the policy period" applies because the Michael Kors Lawsuit alleged conduct that preexisted the CP Policies issued by the Plaintiffs;

h.  The exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of a criminal act committed by or at the direction of the insured" applies because the Michael Kors Lawsuit alleged counterfeiting, which may qualify as a criminal act;

i.  The exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" applies because the Michael Kors Lawsuit alleges, among other things, trademark infringement and counterfeiting, including a claim specifically against DTH and Lebov for contributory trademark counterfeiting, trademark infringement, trademark dilution and false designation of original;

j.  The exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers" applies because the Michael Kors Lawsuit primarily alleged trademark infringement and counterfeiting including allegations that as a result of this conduct the general public has been confused into believing that the counterfeit Michael Kors' merchandise are in fact genuine;

k.  The CP Policies provide under CGL Coverage B that they will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and the Michael Kors Lawsuit

includes claims for non-monetary relief including equitable, declaratory and/or injunctive relief, which are not covered; and

l.   The CP Policies only provide coverage under the CGL coverage part for "damages... to which this insurance applies" and the Michael Kors Lawsuit seeks punitive damages, which are uninsurable.

50.   Upon information and belief, Defendants dispute Plaintiffs' position that they do not have a duty to defend and/or indemnify Defendants DTH and Lebov for the claims alleged in the Michael Kors Lawsuit and they claim a defense and indemnity from Plaintiffs for any and all damages alleged in the Michael Kors Lawsuit.

51.   Plaintiffs and Defendants have a substantial uncertainty as to their rights and liabilities in connection with the Michael Kors Lawsuit, and Plaintiffs have a legal and equitable interest in said lawsuit.

52.   There are actual bona fide and substantial questions and issues in dispute and substantial uncertainty in the legal relationship between Plaintiffs and Defendants DTH and Lebov with respect to the duty, if any, of Plaintiffs to defend and/or indemnify Defendants DTH and Lebov or any party who may gain a judgment against them as the result of the claims alleged in the Michael Kors Lawsuit.

53.   There is no pending action in which the issues to be determined by this declaratory judgment action will be decided.

**Second Cause of Action - Declaratory Judgment – Umbrella Policies**

54.   Peerless has no obligation to defend Defendants DTH and Lebov against any and all claims alleged in the Michael Kors Lawsuit pursuant to the terms of the four consecutive Umbrella Policies and/or has no duty to indemnify Defendants DTH and Lebov or anyone else,

including anyone who may gain a judgment against them for any injuries or damages claimed in the Michael Kors Lawsuit per the terms of the Umbrella Policies, because:

    a.   The Umbrella Policies provide coverage for "bodily injury" or "property damage that "is caused by an 'occurrence' that takes place in the 'coverage territory'…" and the Michael Kors Lawsuit alleged solely economic losses due to intentional conduct, which does not qualify as "bodily injury", "property damage" or an "occurrence" as defined by the Umbrella Policies.

    b.   The Umbrella Policies provide that Peerless Insurance Company "will pay on behalf of the insured those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages" and DTH and Lebov are not legally obligated to pay any sum in excess of the "retained limit";

    c.   The Umbrella Policies provide that Peerless Insurance Company has the right and duty to defend when the insurance applies and "**(a)** Such damages are not covered by 'scheduled underlying insurance' or 'other underlying insurance'; or **(b)** [t]he applicable limits of liability of the 'scheduled underlying insurance'; or 'other underlying insurance' have been exhausted by payment of judgments or settlements" and DTH and Lebov are being provided a defense and there have not been any payments of judgments or settlements exhausting any limits;

    d.   The Umbrella Policies provide that DTH's managers, members, and/or employees can qualify as insureds but only to a limited extent as provided in the Umbrella Policies and Lebov's conduct as alleged in the Michael Kors Lawsuit was outside of this capacity;

e.  The Umbrella Policies provide that they apply to "personal and advertising injury" that is "caused by an 'offense' arising out of your business but only if the 'offense' was committed in the 'coverage territory' during the Policy Period" and the Michael Kors Lawsuit alleged conduct that preexisted the policy periods of the Umbrella Policies issued by Peerless Insurance Company.

f.  The Umbrella Policies provide that they apply to "personal and advertising injury" that is "caused by an 'offense' arising out of your business but only if the 'offense' was committed in the 'coverage territory' during the Policy Period" and none of the allegations set forth in the Michael Kors Lawsuit qualify as one of the enumerated "personal and advertising injury" offenses;

g.  The exclusion in the Umbrella Policies for "personal and advertising injury" that was "[c]aused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors' goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;.

h.  The exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael

Kors goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

i.   The exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of oral or written publication of material whose first publication took place before the beginning of the Policy Period" applies because the Michael Kors Lawsuit alleged conduct that preexisted the CP Policies issued by the Plaintiffs;

j.   The exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of a criminal act committed by or at the direction of any insured" applies because the Michael Kors Lawsuit alleged counterfeiting, which may qualify as a criminal act;

k.   The exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" applies because the Michael Kors Lawsuit alleges, among other things, trademark infringement and counterfeiting, including a claim specifically against DTH and Lebov for contributory trademark counterfeiting, trademark infringement, trademark dilution and false designation of original;

l.   The exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers" applies because the Michael Kors Lawsuit primarily alleged trademark infringement and counterfeiting including allegations that as a result of

this conduct the general public has been confused into believing that the counterfeit Michael Kors' merchandise are in fact genuine;

m.  The Umbrella Policies provide that they "will pay on behalf of the insured those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies" and the Michael Kors Lawsuit includes claims for non-monetary relief including equitable, declaratory and/or injunctive relief, which are not covered; and

n.  The Umbrella Policies only provide coverage for "damages… to which this insurance applies" and the Michael Kors Lawsuit seeks punitive damages, which are uninsurable.

55.  Upon information and belief, Defendants dispute Peerless' position that it does not have a duty to defend and/or indemnify Defendant DTH and Lebov for the claims alleged in the Michael Kors Lawsuit and they claim a defense and indemnity from Peerless for any and all damages alleged in the Michael Kors Lawsuit.

56.  Peerless and Defendants have a substantial uncertainty as to their rights and liabilities in connection with the Michael Kors Lawsuit, and Peerless has a legal and equitable interest in said lawsuit.

57.  There are actual bona fide and substantial questions and issues in dispute and substantial uncertainty in the legal relationship between Peerless and Defendants DTH and Lebov with respect to the duty, if any, of Peerless to defend and/or indemnify Defendants DTH and Lebov or any party who may gain a judgment against them as the result of the claims alleged in the Michael Kors Lawsuit.

58.     There is no pending action in which the issues to be determined by this declaratory judgment action will be decided.

**WHEREFORE**, the Plaintiffs Peerless Insurance Company and Excelsior Insurance Company, seek a declaratory judgment determining the rights and liabilities of the parties as follows:

1.     That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the CP Policies provide in CGL Coverage A coverage for "bodily injury" or "property damage that "is caused by an 'occurrence' that takes place in the 'coverage territory'…" and the Michael Kors Lawsuit alleged solely economic losses due to intentional conduct, which does not qualify as "bodily injury", "property damage" caused by an "occurrence" as defined by the CP Policies;

2.     That Plaintiffs do not have an obligation to defend Lebov or indemnify Lebov or anyone else, including anyone who may gain a judgment against him, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the CGL Policies provide that DTH's managers, members, and/or employees can qualify as insureds but only to a limited extent as provided in the CP Policies and Lebov's conduct as alleged in the Michael Kors Lawsuit was outside of this capacity;

3.     That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the CP Policies provide in CGL Coverage B coverage for "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during

26

the policy period" and the Michael Kors Lawsuit alleged conduct that preexisted the policy periods of the CP Policies issued by the Plaintiffs;

4.      That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the CP Policies provide in CGL Coverage B coverage for "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period" and none of the allegations set forth in the Michael Kors Lawsuit qualify as one of the enumerated "personal and advertising injury" offenses;

5.      That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the exclusion in CGL Coverage B for "personal and advertising injury" that was "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors' goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

6.      That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of oral or written

publication of material, if done by or at the direction of the insured with knowledge of its falsity" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

7.      That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of oral or written publication of material whose first publication took place before the beginning of the policy period" applies because the Michael Kors Lawsuit alleged conduct that preexisted the CP Policies issued by the Plaintiffs;

8.      That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of a criminal act committed by or at the direction of the insured" applies because the Michael Kors Lawsuit alleged counterfeiting, which may qualify as a criminal act;

9.      That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of the infringement of

copyright, patent, trademark, trade secret or other intellectual property rights" applies because the Michael Kors Lawsuit alleges, among other things, trademark infringement and counterfeiting, including a claim specifically against DTH and Lebov for contributory trademark counterfeiting, trademark infringement, trademark dilution and false designation of original;

10.     That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the exclusion in CGL Coverage B for "personal and advertising injury" that arises "out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers" applies because the Michael Kors Lawsuit primarily alleged trademark infringement and counterfeiting including allegations that as a result of this conduct the general public has been confused into believing that the counterfeit Michael Kors' merchandise are in fact genuine;

11.     That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the CP Policies provide under CGL Coverage B that they will "pay those sums that the insured because legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" and the Michael Kors Lawsuit includes claims for non-monetary relief including equitable, declaratory and/or injunctive relief, which are not covered;

12.     That Plaintiffs do not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the CP Policies because the CP Policies only

provide coverage under the CGL coverage part for "damages… to which this insurance applies" and the Michael Kors Lawsuit seeks punitive damages, which are uninsurable;

13.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide coverage for "bodily injury" or "property damage that "is caused by an 'occurrence' that takes place in the 'coverage territory'…" and the Michael Kors Lawsuit alleged solely economic losses due to intentional conduct, which does not qualify as "bodily injury", "property damage" or an "occurrence" as defined by the Umbrella Policies;

14.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide that Peerless Insurance Company "will pay on behalf of the insured those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages" and DTH and Lebov are not legally obligated to pay any sum in excess of the "retained limit";

15.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide that Peerless Insurance Company has the right and duty to defend when the insurance applies and "**(a)** Such damages are not covered by 'scheduled underlying insurance' or 'other underlying insurance'; or **(b)** [t]he applicable limits of liability of the 'scheduled underlying insurance'; or 'other underlying insurance' have been exhausted by

payment of judgments or settlements" and DTH and Lebov are being provided a defense and there have not been any payments of judgments or settlements exhausting any limits;

16.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide that DTH's managers, members, and/or employees can qualify as insureds but only to a limited extent as provided in the Umbrella Policies and Lebov's conduct as alleged in the Michael Kors Lawsuit was outside of this capacity;

17.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide that they apply to "personal and advertising injury" that is "caused by an 'offense' arising out of your business but only if the 'offense' was committed in the 'coverage territory' during the Policy Period" and the Michael Kors Lawsuit alleged conduct that preexisted the policy periods of the Umbrella Policies issued by Peerless Insurance Company;

18.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide that they apply to "personal and advertising injury" that is "caused by an 'offense' arising out of your business but only if the 'offense' was committed in the 'coverage territory' during the Policy Period" and none of the allegations set forth in the Michael Kors Lawsuit qualify as one of the enumerated "personal and advertising injury" offenses;

19.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the exclusion in the Umbrella Policies for "personal and advertising injury" that was "[c]aused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors' goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

20.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity" applies because the Michael Kors Lawsuit alleged that DTH and Lebov had knowledge of sale of counterfeit Michael Kors goods at the Flea Market, that despite this knowledge did not sufficiently act to prevent the sale of illegal merchandise at the Flea Market despite having the ability to do so, and that they have willfully induced and aided in the counterfeiting of the Michael Kors' trademarks;

21.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies

because the exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of oral or written publication of material whose first publication took place before the beginning of the Policy Period" applies because the Michael Kors Lawsuit alleged conduct that preexisted the CP Policies issued by the Plaintiffs;

22.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of a criminal act committed by or at the direction of any insured" applies because the Michael Kors Lawsuit alleged counterfeiting, which may qualify as a criminal act;

23.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the exclusion in the Umbrella Policies for "personal and advertising injury" that arises "out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" applies because the Michael Kors Lawsuit alleges, among other things, trademark infringement and counterfeiting, including a claim specifically against DTH and Lebov for contributory trademark counterfeiting, trademark infringement, trademark dilution and false designation of original;

24.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the exclusion in the Umbrella Policies for "personal and advertising injury" that arises

"out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers" applies because the Michael Kors Lawsuit primarily alleged trademark infringement and counterfeiting including allegations that as a result of this conduct the general public has been confused into believing that the counterfeit Michael Kors' merchandise are in fact genuine;

25.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies provide that they "will pay on behalf of the insured those sums in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies" and the Michael Kors Lawsuit includes claims for non-monetary relief including equitable, declaratory and/or injunctive relief, which are not covered;

26.     That Peerless Insurance Company does not have an obligation to defend DTH and Lebov or indemnify DTH and Lebov or anyone else, including anyone who may gain a judgment against them, for the claims made in the Michael Kors Lawsuit pursuant to the Umbrella Policies because the Umbrella Policies only provide coverage for "damages… to which this insurance applies" and the Michael Kors Lawsuit seeks punitive damages, which are uninsurable; and

27.     Such other relief as this Court may deem just, reasonable and equitable.

THE  PLAINTIFFS
EXCELSIOR INSURANCE
COMPANY and PEERLESS
INSURANCE COMPANY


By:   /s/ Michael Lettiero
Michael Lettiero
Federal Bar No: CT28428
Gerber Ciano Kelly Brady
100 Corporate Place, Suite 300
Rocky Hill, CT 06067
Tel/Fax: 860-856-6778
mlettiero@gerberciano.com

Joanna Roberto
Federal Bar No.: CT19558
Gerber Ciano Kelly Brady
1325 Franklin Avenue
Suite 540
Garden City, NY 11530
Tel/Fax: 516-329-9403
jroberto@gerberciano.com